**Roger Lee DAVIDSON Plaintiff**

v.

**KEMPER NATIONAL SERVICES, INC., Defendant**

No. 1:01CV00096.

United States District Court,
W.D. Virginia,
Abingdon Division.

Oct. 10, 2002.

James Dale Morefield, Morefield, Kendrick, Hess & Largen, Abingdon, VA, for Plaintiff.

Danielle L. Smith, Penn, Stuart & Eskridge, Abingdon, VA, for Defendants Kemper National Services, Inc.

### Memorandum Opinion

GLEN M. WILLIAMS, Senior District Judge.

This case is before the court on cross motions for summary judgment. At issue here is entitlement to disability benefits under a Group Short Term Disability Plan (the "Plan") issued by the Defendant ("Kemper") through Lumbermans Mutual Casualty Company, Kemper's parent company. For the reasons contained in this memorandum opinion, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

### I. Factual Background and Standard of Review

Plaintiff, Roger Lee Davidson ("Davidson"), is pursuing a claim under the Employment Retirement Income Security Act ("ERISA") for denial of his claim for Short Term Disability Benefits ("STD benefits"). ERISA, 29 U.S.C.A. §§ 1001–1461 (West 2002), exclusively governs disputes involving employer-provided employee welfare plans, like the disability plan here.

The standard of review applied in determining the outcome of a motion for summary judgment is whether there is "[a] genuine issue of material fact ...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *See also* Fed.R.Civ.P. 56(c). If there is no genuine issue of material fact, then summary judgment is appropriate.

In determining whether there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom, in the light most favorable to the non-moving party. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) (citation omitted). However, "where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party...," then "no genuine issue exists for trial, and summary judgment is appropriate." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### II. Facts

The Plaintiff worked for Titan International, Inc. ("Titan") as a heavy manual laborer. As benefits to its employees, Ti-

tan provided short-term disability benefits, administered by the Defendant, Kemper National Services, Inc. ("Kemper"). Under the terms of the Plan, Kemper agreed, in the event that Davidson was disabled by being continuously unable to perform the essential functions of his regular occupation or a reasonable employment option offered to him by his employer, to pay Davidson a weekly benefit equal to a percentage of his weekly salary. (R. at 187.)

The Plan defines disability as "a significant change in your physical or mental condition due to: (1) Accidental injury; (2) Sickness; (3) Mental Illness; (4) Substance abuse; or (5) Pregnancy". (R. at 187.)

It is important to note at the outset, that while Kemper administered the Plan, the Plan was actually insured by Lumbermans Mutual Casualty Company ("LMC"), the parent company of Kemper. It is Kemper's contention that because they are not the insurer of the Plan, but rather a third party claim administrator, that they have no financial interest in the outcome of any claim for disability benefits that should come before them. It should also be noted at the outset, and for reasons to be discussed later, that the court is unwilling to accept the notion that a parent company has no financial interest in its subsidiary company. To do so would cause the court to go against the grain of traditional business practice. A step this court is simply not going to take.

It is therefore the ruling of this court that Kemper does carry a financial interest in the outcome of the claim for disability benefits concerned in this case, and as a result, the modification of the abuse of discretion standard will be applied. Both the abuse and discretion standard, and the modification thereof will be defined further in this opinion.

Returning to the facts, Davidson most recently worked as a Process Technician in Titan's earth moving machine manufacturing business, which required him to lift wheels into machinery during the manufacturing process. (R. at 41 and 44.) Davidson became unable to work on April 3, 2000, and subsequently filed an application for STD benefits on April 19, 2000. (R. at 51.) In his application for benefits, Davidson stated that he suffered from "back pain, inability to straighten up, ... and possible arthritis of the spine." (R. at 51.)

On April 10, 2000, Davidson was seen by Dr. Travis Burt. Dr. Burt diagnosed Davidson with Far lateral left L3/L4 disc herniation and was given an out of work slip until he could return for further testing by way of an EMG of Davidson's left leg. (R. at 55.) By letter dated May 2, 2000, Kemper denied Davidson's claim for benefits on the basis that Davidson provided a "lack of objective medical information." (R. at 64.)

On June 27, 2000, Davidson appealed Kemper's decision by letter that included all of his medical records from the time of his work stoppage. (R. at 67.) On July 13, 2000, Dr. Lawrence Blumberg, a specialist in Orthopedic Surgery, performed a peer review consultation at the request of Kemper. Dr. Blumberg reviewed all of Davidson's medical records available to Kemper at this point. (R. at 16.) It was Dr. Blumberg's determination that the medical records showed no abnormalities that would cause Davidson's low back and groin pain. (R. at 16.) Dr. Blumberg indicated that "the information provided in the records fails to support any disability," (R. at 16–17.) and that there was no causal relationship between the degeneration of the discs revealed by Davidson's MRIs and Davidson's complaints of severe pain. (R. at 17.)

Dr. Bloomberg performed a second peer review of additional medical records re-

ceived, and issued a report based upon the contents of these records. (R. at 20.) Dr. Bloomberg found the additional medical records to be non-persuasive and noted in his report that "[t]here are no objective abnormalities and no objective findings in any of the tests performed. There is no need for further treatment as far as any specific injuries concerned in this claimant." (R. at 21.) On September 19, 2000, Kemper denied Davidson's claim for STD benefits. (R. at 145–48.) Again, Kemper based its denial on "lack of objective medical information ... supporting [Davidson's] inability to work as a line processor ...." (R. at 145.)

For a second time, on October 11, 2000, Davidson sought review of the denial of his claim. In support of his request for further review, Davidson submitted a report from Dr. Gregory Corradino dated May 19, 2000, in which Dr. Corradino stated that Davidson has low back and bilateral groin pain with a far lateral disc protrusion at the L3/L4 level with degenerative changes of the lumbar spine, and that he is currently unable to work. (R. at 157–58.)

A radiographic report dated February 25, 2000, was also submitted on Davidson's behalf from the Smyth County Community Hospital which showed degenerative changes of T11–12 through L5–S1 disc space levels of the spine with predominance at the lower two levels and a cavernous hemagioma of the L2 vertebral body. (R. at 71–2.)

Davidson also submitted a report, received by Kemper on November 6, 2000, from Dr. Turney Williams of Pain Medicine Associates, P.C. In his report, Dr. Williams stated that "[i]t is [his] impression that Mr. Davidson suffers from symptomatic degenerative disc disease, multi-levelin nature, most marked at the L4–L5 and L5–S1 level." (R. at 172.)

A final report submitted by Dr. Rudolfo Ceballos, dated June 6, 2000, showed abnormalities of the L4 and L5 vertebral bodies and apparent spondylolysison on the right at L4 and on the left at L5. (R. at 113.)

Upon reviewing the aforementioned medical records, on January 25, 2001, Kemper upheld its denial of Davidson's claim for STD benefits, restating that Davidson's medical evidence lacked the foundation to support his claim. (R. at 177–79.)

On March 15, 2001, in all likelihood as a result of receiving substantial evidence in support of Davidson's claim for STD benefits, Kemper requested another performance of peer review. Dr. Jacob Lazarovic, a specialist in Internal Medicine, reviewed all of Davidson's medical records submitted to Kemper to date, including the letter provided by Dr. Williams stating that Davidson suffered from degenerative disc disease, which he believed to be the cause of Davidson's low back and groin pain. (R. at 172.) Dr. Lazarovic concluded that while Davidson "has subjective complaints of pain, [there is] no evidence clinically or radiographically of a significant impairment." In other words, Dr. Lazarovic supported the findings of Kemper that Davidson was not disabled as defined by the terms of the Plan.

After Dr. Lazarovic submitted his report to Kemper, no further action was taken on its behalf. In response, Davidson brought this action before this court pursuant to ERISA, in order to recover disability benefits due to him under the Plan established by Titan, and to clarify his rights to future benefits under the terms of the Plan.

### III. Analysis

The law governing claims for denial of benefits under ERISA is well settled. In cases where the Plan grants the administrator discretion to determine eligibility for benefits, as it does in this case, the court may only review the administra-

tor's decision for an abuse of discretion. *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 232 (4th Cir.1997). Under this standard, the administrator's decision will not be disturbed if it is reasonable, even if the court would have come to a different conclusion. *Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 89 (4th Cir.1996). In this context, a decision is reasonable if it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997) (quoting *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 787 (4th Cir.1995)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (citations omitted).

■ There is however an exception to this general rule. Where the plan administrator has a conflict of interest, namely, if the administrator is also the plan's insurer, then the abuse of discretion standard must be modified to account for the accompanying potential for partisanship. *Elliott v. Sara Lee Corp.,* 190 F.3d 601, 605 (4th Cir.1999)(citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). In deviating from the abuse of discretion standard, courts must do so only to the extent necessary to counteract evidence of undue influence. *Id.* (citing *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 233 (4th Cir.1997)). While a conflict does not require such a deviation per se, it does create a "sliding scale," *Ellis,* 126 F.3d at 233: the amount of deference given to an administrator's denial of benefits is inversely proportional to the degree of self-dealing evident in the record. *Martin v. Blue Cross & Blue Shield of Va., Inc.,* 115 F.3d 1201, 1206 (4th Cir.1997)(citing *Doe v. Group Hosp. & Med. Servs.,* 3 F.3d 80, 85 (4th Cir.1993) (stating that the amount of deference given to a fiduciary's decision must be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict)).

■ Because Kemper is deemed by this court to have a financial interest in the outcome of this claim, because it is the administrator of the Plan, and because the Plan confers upon Kemper discretionary authority,[1] the court will review the record under the modified abuse of discretion standard. Moreover, it is apparent that Kemper's decision to deny Davidson's claim is entitled to little deference: from the outset it is clear that Kemper failed to administer the Plan impartially, as required by the trust principles accompanying Kemper's fiduciary position under ERISA. 29 U.S.C.A. § 1002(21)(A) (West 2002).

The court makes this finding from the circumstances surrounding Kemper's initial denial of benefits.[2] Davidson first filed his claim for STD benefits claiming that he had been unable to work due to "back pain", "inability to straighten up" and "possible arthritis of the spine." (R. at 51.) Dr. Burt, a neurologist, submitted a report to Kemper stating that Davidson was unable to work, at the very least, until further tests could be administered. Dr. Burt submitted to Kemper an out of work slip, noting that Davidson was unable to work because of a Far lateral left L3/L4 disc herniation. (R. at 54–55.) Despite a

---

**1.** The court notes that the parties do not contest that the Plan at issue here grants discretionary review to Kemper. (Pl.'s Mot. Summ. J. at 1.) Furthermore, the language in the plan itself clearly confers as much. (Def.'s Mot. Summ. J. at 5–6.)

**2.** The court relies on the record as submitted by the Defendant.

452

medical diagnosis to the contrary, Kemper denied Davidson's claim basing their denial on a lack of objective medical documentation to support Davidson's disability. (R. at 64.)

As of May 2, 2000, the date of Kemper's initial denial of Davidson's claim, the only information available to Kemper upon which its decision was based, was that of Dr. Burt's report. (R. at 64.) Dr. Burt's report unmistakably indicates that Davidson was unable to perform his duties whether in a full or restricted manner. (R. at 50.) Based on this report, and having nothing else before it, Kemper, in denying Davidson's claim, reasoned that "the information submitted by Dr. [Burt] indicates that the examination findings were normal and does not indicate evidence of a disability." (R. at 64.) A simple glance, let alone a close reading of Dr. Burt's report, demonstrates this line of reasoning to have been made at best in error, and at worst, in bad faith. Nowhere in Dr. Burt's report does it state that Davidson is without disability. At a minimum, Dr. Burt's report indicated that until further testing could be performed, Davidson is unable to perform his duties of employment. Further testing, as previously stated, confirmed Dr. Burt's suspicions and became his diagnosis. Drawing this portion of the analysis to a close, there is no possible interpretation of Dr. Burt's report that can conclusively conclude an absence of disability, and thus a denial of benefits.

■ Following his initial denial, Davidson's claim went through two administrative reviews, upholding his denial. ERISA requires that plan administrators give plan participant appeals a "full and fair review." 29 U.S.C.A. § 1333(2) (West 2002). A full and fair review accomplishes two goals: to allow plan fiduciaries to administer plans without a formal adversarial process; and to protect a participant from arbitrary or unprincipled decision-making. *Weaver v. Phoenix Home Life Mut. Ins. Co.,* 990 F.2d 154, 157 (4th Cir.1993) (citing *Grossmuller v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am.,* 715 F.2d 853, 857 (3d Cir.1983)).

■ When reviewing an administrator's decision, courts may not consider extrinsic evidence, that is, any evidence not brought before the administrator, initially or in subsequent administrative review. *Elliott v. Sara Lee Corp.,* 190 F.3d 601, 608–09 (4th Cir.1999). Accordingly, this court will limit this inquiry to the record as it existed at the time of Kemper's final decision.

This review will seek to determine if Kemper's decision "is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries." *Doe v. Group Hospitalization & Med. Servs.,* 3 F.3d 80, 87 (4th Cir.1993.) More succinctly, Kemper's decision must not only be reasonable, but appropriate. *See, e.g., Klebe v. Mitre Group Health Care Plan,* 894 F.Supp. 898, 903 (D.Md.1995), *aff'd,* 91 F.3d 131, 1996 WL 405220 (4th Cir.1996); James F. Jorden, et al., *Handbook on ERISA Litigation,* § 4.04[c], at 4–42 (2d ed.2000).

On June 27, 2000, Davidson appealed Kemper's decision by letter that included additional medical records. (R. at 67.) Upon receiving the appeal notice from Davidson and the additional medical records, on September 19, 2000, Kemper again denied Davidson's claim. In reaching this determination, Kemper had before it for its review, the following documentation: out of work slips from Dr. Williams, out of work slips from Dr. Corradino, office notes from Dr. Moskowitz, office notes from Dr. Corradino, office notes from Dr. Burt (as previously discussed), nerve conduction test results, an x-ray report of the

lumbar spine and an MRI of the lumbar spine report.

In reviewing the notes of Dr. Moskowitz, it is the court's conclusion that the report is not medically supportive of either notion; that either Davidson is disabled or he is not disabled. While Dr. Moskowitz does indicate in his report that there is "[n]o disc herniation...", he also indicates that "[t]here are degenerative changes to varying degrees at all visualized disc space levels which is from the T11–12 through the L5–S1 levels." (R. at 124.) Giving due weight to both diagnoses, it still cannot be inferred by Kemper, with any form of reasonableness or good faith, that Dr. Moskowitz's report supports a finding of non-disability on the behalf of Davidson. To do so, would be to selectively choose the portions of Dr. Moskowitz's report that best support its denial of Davidson's claim. To do so, would be to evaluate Davidson's claim in bad faith.

Kemper asserts, and would have this court believe, that the MRIs presented by the plaintiff are "far from providing conclusive evidence of his disability, [and] serve only to heighten the inability of plaintiff's own health care providers to determine the cause of [ ] Davidson's pain." (Def. Mot. Summ. J. at 8.) Kemper also notes that "pain, by itself, [is] not adequate proof of disability." (R. at 39.)

A review of the Plan reveals to the contrary what Kemper would have this court believe. The Plan defines "disability," and its definition can be found on page three (3) of this memorandum opinion. Upon defining the term "disability," the Plan states that the disability must have "[begun] on or after your Coverage Effective Date and has caused your inability to perform, during the Benefit Qualifying Period and thereafter, the Essential Functions of your Regular Occupation or Reasonable Employment Option offered to you by the Employer, and as a result you are unable to earn more than 80% of your Pre-disability Weekly Income." (R. at 187.)

In conjunction with the above quoted paragraph taken from the Plan, and in reviewing the Plan in its entirety, no reference can be found as to the suggested requirement that pain in and of itself is not adequate proof of disability. The court looks upon this notion as a mere attempt to deter Davidson from properly bringing his claim. In light of this attempted deterrence by Kemper, and taken in context of the entire record before this court, this court further cements its position that Kemper has addressed this claim with the very partisanship that defines bad faith.

On October 11, 2000, Davidson again filed an appeal of Kemper's denial. (R. at 154.) Contained in this appeal were office notes from Dr. Corradino and a letter from Dr. Turney Williams of Pain Medicine Associates, P.C. which Kemper received on November 6, 2000. (R. at 172.)

Dr. William's letter, dated October 23, 2000, clearly indicates that Davidson is, at a minimum, temporarily disabled. Dr. Williams states that in his professional opinion, Davidson's "symptoms are real, consistent with his radiologic studies and physical exam, and that he should be covered by his disability policy...." (R. at 172.)

In addition to his own findings that Davidson is in fact disabled, as supported by his letter, Dr. Williams also defeats any contention by Dr. Corradino that Davidson is not disabled. In recognizing that Dr. Corradino's evaluation of Davidson suggests that Davidson is a poor surgical candidate, Dr. Williams notes that it in no way suggests that Davidson "does not hurt or that his symptoms are factitial in nature." (R. at 172.)

Having analyzed Dr. Corradino's report, the court agrees. Simply because Dr.

Corradino's diagnosis finds there to be no correlation between Davidson's symptoms and his Far lateral disc at the L3–L4 level on the left, does not equate to Davidson being able to perform his duties of employment.

Recognizing that there is purported conflict between Dr. Williams diagnosis and the diagnosis of Dr. Corradino, the court finds itself in all too familiar position of making a judgment based decision. In making this decision, the court must evaluate all that is before it, and is well within its rights to draw any necessary inferences in making such a decision. Often times the record will avail itself of information that provides for the court the necessary justification in rendering its decision; such is the case before this court.

In the office notes provided by Dr. Corradino, it is recommended that Davidson see Dr. Williams for further "pain management." (R. at 156.) From this report an inference can be drawn that Dr. Corradino is deferring expertise to Dr. Williams with regard to the condition and "pain management" of Davidson. The court must ask, in a rhetorical fashion, why did Dr. Corradino refer Davidson to Dr. Williams? The answer must generally be because Dr. Corradino is without the necessary knowledge to diagnose and properly treat Davidson. Again, in logical fashion, the court can draw this inference from Dr. Corradino's report and thus give deference to the report and diagnosis of Dr. Williams, in light of the fact that Dr. Corradino and Dr. Williams only agree as to the diagnosis; that Davidson suffers from "low back and bilateral groin pain and far lateral L3–L4 disc herniation." (R. at 158 and 172.)

■ Having gone through and addressed the record before the court, it should be noted that the Fourth Circuit has yet to formally decide whether the "Treating Physician's Rule," applicable in social security cases, should be used in ERISA cases. *Elliott v. Sara Lee Corp.* at 607. Accordingly, this court will not do so, with the following caveat: in an ERISA case, a treating physician should be given at least as much deference as any other, except in those cases where abuse of discretion is clearly the proper standard of review.

■ Furthermore, in those cases where the standard of review has been modified to counteract untoward influences, a treating physician should be given greater deference than an employee of the administrator/insurer. Given this realization, this court simply cannot accept the opinion of Kemper's own reviewing physicians, based solely upon an examination of the paper record, over that of Dr. Burt, Davidson's treating physician. This result is especially warranted in light of the fact that Dr. Burt has absolutely no interest in the outcome of this matter, unlike his colleagues in contest.

■ In addition to his disability benefits, the court may in its discretion award reasonable attorney's fees and costs. 29 U.S.C.A. § 1132(g)(1) (2002). The Fourth Circuit has elicited the principal factors a district court must consider when awarding fees and costs in an ERISA claim. Among those factors are: (1) bad faith; (2) ability to pay; (3) potential for deterrence; and (4) the relative merits of the parties' claims. *O'Bryhim v. Reliance Standard Life Ins. Co.,* NO. 98–1472, 1999 WL 61789, at **9–10 (4th Cir. Aug. 16, 1999) (citing *Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1029–30 (4th Cir.1993)).

This court is of the opinion that a minimum of three of the four above mentioned factors apply in this case. Although traces of bad faith are sprinkled throughout the record on Kemper's behalf, the court is not in need of applying it in order to award the aforementioned fees. Assuming arguendo

the absence of bad faith, the court still finds that Kemper, being a multi-billion dollar corporation, has the ability to pay; that there is potential for deterrence, provided this precedent is followed in future similar cases; and per this memorandum opinion, that there is overwhelming evidence, contained within the record, that the relative merits of the parties's claims weighs heavily in favor of Davidson. Thus, Davidson is entitled to reasonable attorney's fees.

In assessing what constitutes reasonable fees, the court directs the parties to consider: a reasonable rate, comparable to that charged in the community by lawyers of comparable skill, experience and reputation for similar services, *Blum v. Stenson,* 465 U.S. 886, 895, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891(1984); a reasonable number of hours, excluding those that are excessive, redundant, or otherwise unnecessary, *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); and the results obtained. *Id.* at 435, 103 S.Ct. 1933. The court also awards pre-and post-judgment interest of the amount owed, as will be determined at a later date.

### IV.  Conclusion

For reasons set forth above, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment. Judgment is hereby entered in favor of the Plaintiff, finding that Plaintiff is entitled to disability benefits under a Group Short Term Disability Plan issued by the Defendant through its parent company.

The Plaintiff is hereby **ORDERED** to submit to the court petitions for fees and costs, and monies owed, including interest, within twenty days of the date of this order. The Defendant shall thereafter have an additional twenty days to respond. The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.

A final order will be entered in accordance with this opinion.