**In re ANC RENTAL CORPORATION, et al., Debtors.**

**No. 01–11200(MFW).**

United States Bankruptcy Court, D. Delaware.

April 15, 2005.

Joseph Grey, Esquire, Stevens & Lee, Wilmington, DE, Counsel for the Debtors.

Brendan Linehan Shannon, Esquire, Young, Conaway Stargatt & Taylor LLP, Wilmington, DE, Counsel for Creditors' Committee.

William P. Bowden, Esquire, Ashby & Geddes, Wilmington, DE, Counsel for Lehman Brothers Inc. and Lehman Commercial Paper Inc.

Richard H. Cross, Jr., Esquire, Cross & Simon LLC, Wilmington, DE, Counsel for Deutsche Bank Securities, Inc.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court are the Objections of the Debtor, the Creditors' Committee, and Lehman Brothers Inc. and Lehman Com-

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

mercial Paper Inc. (collectively "Lehman") to the Administrative Claim filed by Deutsche Bank Securities, Inc. ("DB"). For the reasons stated below we will sustain the Objections and disallow the claim.

## I. FACTUAL BACKGROUND

ANC Rental Corporation ("the Debtor") and several affiliates filed voluntary petitions for relief under chapter 11 on November 13, 2001. On March 8, 2002, the Debtor entered into a series of financing transactions to support its car rental business. As part of these transactions, the Debtor entered into an engagement letter dated March 29, 2002, amended on July 1, 2002 ("the Agreement") retaining DB as the placement agent for notes totaling up to $1.05 billion to be issued by a special purpose entity owned by the Debtor. The Agreement between the parties provided for a placement fee to be paid to DB upon issuance of the notes and also provided for a fee if the Agreement was terminated ("the Termination Fee"). Notes were ultimately issued under this arrangement in the amount of $825 million. DB has received all fees due for arranging that financing for the Debtor.

On June 12, 2003, the Debtor filed a motion to sell substantially all of the joint Debtors' assets to Cerberus Capital Management, L.P., and Vanguard Car Rental USA, Inc. The sale was approved by the Court on August 8, 2003, and closed on October 14, 2003.

On August 22, 2003, DB filed a Motion for allowance of an administrative claim (totaling $5.25 million) for the Termination Fee. A hearing was held on October 9, 2003, at which time we denied DB's motion, finding that the Agreement had not been terminated. On October 21, 2003, the Debtor filed a Joint Liquidating Plan.

The Plan, as amended, was confirmed on April 15, 2004.

DB thereafter filed an administrative expense claim for the Termination Fee. The Debtor, the Committee, and Lehman (collectively "the Objectors") filed objections to the claim. A further hearing on the claim was held on March 8, 2004. At that time, we took the matter under advisement. The matter is ripe for decision.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(1)(B).

## III. DISCUSSION

DB seeks allowance of an administrative expense arguing that the Debtor terminated the Agreement by failing to take additional funding, selling all its assets, and/or confirming a liquidating plan. The Objectors seek to disallow the claim for three reasons: (1) the Debtor did not terminate the Agreement; (2) the Termination Fee is an unenforceable penalty; and (3) the calculation of the Termination Fee is incorrect. Because we conclude that the Agreement was not terminated, we need not discuss the remaining objections.

### A. Interpretation of the Contract

■ The initial interpretation of a contract is for the court to decide. See, e.g., Lee v. Marvel, 2005 WL 89376, 2005 U.S. Dist. LEXIS 587 at *21 (S.D.N.Y. Jan. 17, 2005) (citations omitted).[2] In doing so, the court may not rewrite an ambiguous contract to achieve a reasonable result. See, e.g., Brisbin v. Superior Valve Co., 398 F.3d 279, 290 (3d Cir.2005). Instead, the court must accept the most reasonable interpretation of the language provided. Id. See also Baum v. County of Rockland, 337

2. The Agreement provides that it is to be interpreted under New York law.

F.Supp.2d 454, 466 (S.D.N.Y.2004) (defining a reasonable interpretation as one which will "accord the words of the contract their fair meaning" and not let "form swallow substance.") (citing *Sutton v. East River Sav. Bank*, 55 N.Y.2d 550, 555, 450 N.Y.S.2d 460, 435 N.E.2d 1075 (1982)).

In this case, the Agreement reads, in pertinent part:

2. *Termination*

This Agreement sets forth the basis upon which the Securities will be offered. Until the definitive documents in connection with the issuance of the Securities have been finally negotiated and signed, either the [Debtor] or DB may at any time elect to terminate the engagement provided for in this Agreement, with or without cause, upon written notice to that effect to the other party.... Without limiting the foregoing or any other provision of this Agreement, if the [Debtor] elects to terminate this Agreement for any reason, then the [Debtor] shall promptly pay DB .50% of the MTN Notional Amount [$1.050 billion].

(Agreement at § 2.)

1. *Termination required in writing*

■ The Objectors argue that no termination occurred because the Agreement requires termination to be in writing and no written termination was given. The Objectors argue that it is a familiar rule of construction that, where a word is repeated in a contract, it is should be given the same meaning throughout the document. *See, e.g., Campbell v. Campbell*, 489 So.2d 774, 777 (Fla.App.1986); *Account of Voight*, 178 A.D. 751, 754, 164 N.Y.S. 738 (1917). From this rule the Objectors argue that the word terminate means "terminate through written notice," wherever it is used in the Agreement.

DB argues that the phrase "in writing" does not appear in the Termination Fee provision. DB asserts that the absence of the phrase "in writing" from the Termination Fee provision itself means that the parties did not intend for termination to be in writing in order for the Termination Fee to be due. It contends that the Debtor's reading of the Agreement requires that we modify it, which is not permissible. *See, e.g., Republic Nat'l Bank of N.Y. v. Olshin Woolen Co. Inc.*, 304 A.D.2d 401, 758 N.Y.S.2d 45, 46 (N.Y.App.Div.2003). DB also asserts that the *Campbell* case, cited by the Objectors, actually supports its argument. It argues that the *Campbell* Court held that, where words appear in two different sections of a contract and are modified in one section and not in another, they should have a different meaning.

The holding of *Campbell* is not as DB asserts. In that case, a will provided that two parties would receive one-third of a business while two other parties would receive one-sixth of the business "apiece." 489 So.2d at 775–76. The lower court held that the first two parties were to split the one-third interest in the business presumably because the language bequeathing the one-third business interest to them did not include the language "apiece." *Id.* at 776. The appellate court reversed, however, holding that the provision was ambiguous and parole evidence should have been admitted. *Id.* at 778. It reasoned that had the testator intended to have the parties split the one-third interest, he would have simply bequeathed them one-sixth apiece as he had the other two. *Id.* at 776. Thus, the Court found the will ambiguous.

In this case the termination provision of the Agreement consists of two paragraphs: one paragraph details *when* and *how* termination occurs and the second details the result *if* termination occurs. It is not necessary, in detailing what happens if termi-

nation occurs, that the parties reiterate all the necessary requirements for termination (in writing, before the securities are executed, etc.) that were already detailed in the immediately preceding paragraph. Thus, we conclude that the proper interpretation of the Agreement is that termination must be done in writing.

## 2. *Termination by actions*

■ DB argues nonetheless that the Debtor terminated the Agreement by its actions. *See, e.g., Saffire Corp. v. Newkidco., LLC,* 286 F.Supp.2d 302, 307 (S.D.N.Y. 2003) (though only one party had right to terminate contract early and had not given notice of termination, the court found that party had nonetheless terminated the contract by failing to perform). Specifically, DB urges that we determine that the Agreement was terminated by the actions of the Debtor in selling its business assets and by filing a liquidating plan, thereby making it unlikely that the Debtor would ever need any additional funding.

The Objectors disagree. They argue that there was no requirement in the Agreement that the Debtor obtain any financing, let alone the maximum amount covered by the Agreement. In fact, the Agreement only required, in the event the Debtor sought financing through the issuance of notes as described in the Agreement, that it use DB as the placement agent. Therefore, the Objectors assert that the Debtor has not terminated the Agreement simply by not taking any financing or by putting itself in a position that it will never need more financing.

We agree with the Objectors. While a contract may be terminated by actions as well as words, such circumstances are not present here. The *Saffire* case upon which DB relies heavily is distinguishable. In *Saffire,* the Court found that a contract was terminated by the breach of one party.

Unlike in *Saffire,* in this case there has been no breach of the Agreement by the Debtor. The Agreement set no specific requirement or deadline by which the Debtor had to issue notes to be placed by DB. Thus, the failure to do so is not a breach of that Agreement.

■ DB argues, however, that the Debtor's actions in liquidating are sufficient to constitute an election by the Debtor to terminate the Agreement. It posits that if the Agreement did not conclude upon the liquidation of the Debtor, then the Agreement would extend indefinitely, even though one of the parties ceased to exist. It asserts that a contract cannot exist without a party and that it would be illogical for this Agreement to continue after the liquidation of the Debtor.

The Objectors dispute this point. They argue that liquidation of the Debtor was contemplated at the time the Agreement was drafted. Furthermore, they assert that had the parties intended to make liquidation an event of termination, they would have expressed this in the Agreement.

We agree with the Objectors. It is reasonable to assume that the effect of future events (contemplated at the time of drafting) would be included in the contract. Thus, the failure to include them as events of termination where it would be "logical and appropriate" is an indication of the parties' intent to exclude them. *Baum,* 337 F.Supp.2d at 467.

In this case, DB contracted with a debtor in possession in a chapter 11 case. A successful reorganization was far from assured at that time. Many chapter 11 cases end in conversion to chapter 7, dismissal or liquidating plans. It would be unreasonable for DB to assume the Debtor would continue to operate. Therefore, if DB had intended that the sale of all the Debtor's

assets or filing of a liquidation plan by the Debtor be a termination of the Agreement, it should have been expressly stated in the Agreement. We will not read into the Agreement a term that is not reasonably intended by the parties.

While DB argues that a contract cannot exist without a counter party, it cites no case law for this proposition. Even cases which do hold that the death of a party terminates an agreement do so for reasons not applicable here. *See, e.g., Gilsey v. Wm. Hengerer Co.*, 285 A.D. 1007, 139 N.Y.S.2d 1, 2 (1955) (holding that death of a party precluded that party from fully performing the contract thereby excusing the other party from its performance); *Greenburg v. Early*, 4 Misc. 99, 23 N.Y.S. 1009 (N.Y.Com.Pl.1893) (finding that death of employee before end of year precluded employee from earning bonus due at year end). Since the Agreement does not require that the Debtor obtain any specific financing through DB, we conclude that it is not prevented from fully performing the Agreement, even if it liquidates.

Furthermore, courts have concluded that going out of business or the liquidation of a party will not necessarily terminate a contract. *See, e.g., Allied Communications Corp. v. Cont'l Cellular Corp.*, 821 F.2d 69, 71–72 (1st Cir.1987) (finding no implied promise to continue to do business in Boston area was contained in contract company executed with another party to service its Boston business); *Quantum Capital Group, Inc. v. Isramco, Inc.*, 637 F.Supp. 206, 209 (S.D.N.Y.1986) (finding fact that broker dealer no longer operated or had any employees did not mean it had rendered itself incapable of performing contract, since nothing in the contract prevented it from delegating its duties to another). *But see, 407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, 280–81, 296 N.Y.S.2d 338, 244 N.E.2d 37

(N.Y.1968) (holding that contract may contain an implied promise to continue in business and remanding for trial on that issue).

In this case, we find no promise to continue to operate can be implied from the parties' Agreement. The Debtor was a debtor in possession in a chapter 11 case at the time it entered into the Agreement with DB. Liquidation, as well as a successful reorganization, were equally possible outcomes. It would be unreasonable for DB to assume the Debtor was undertaking to continue to operate indefinitely. Therefore, we will not read into the Agreement a term that is not reasonably intended by the parties.

■ DB also argues that section 8.1 of the Plan, whereby all executory contracts were rejected, terminated the Agreement. The Objectors disagree. They argue that the Agreement is a post-petition contract which is not an executory contract under section 365 of the Bankruptcy Code. *See, e.g., In re Mushroom Transp. Co., Inc.*, 78 B.R. 754, 760–61 (Bankr.E.D.Pa.1987). Even if it was an executory contract, however, rejection of a contract in bankruptcy is not a termination, but merely a prepetition breach. 11 U.S.C. § 365(g). *See also, Foothill Capital Corp. v. Official Unsecured Creditors' Comm.*, 246 B.R. 296, 301–02 (E.D.Mich.2000). Further, the Order confirming the Plan expressly provided that nothing in the Plan or the Order would constitute a termination of the Agreement between DB and the Debtor. Consequently, we conclude that the Agreement was not terminated by the confirmation of the liquidating Plan.

## IV. CONCLUSION

For the reasons set forth above, we conclude that the Agreement was not terminated in writing as required by its terms. Further, we conclude that neither

the sale of the Debtor's assets nor confirmation of the Debtor's liquidating Plan terminated the Agreement. Therefore, we will sustain the Objections and disallow the administrative expense claim of Deutsche Bank.

An appropriate order is attached.

### ORDER

AND NOW this **15th** day of **APRIL, 2005,** upon consideration of the Administrative Claim filed by Deutsche Bank Securities, Inc., and the Objections of the Debtor, the Creditors' Committee, and Lehman Brothers Inc. and Lehman Commercial Paper Inc., thereto, and for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the Objections are **SUSTAINED** and the Administrative Claim filed by Deutsche Bank Securities, Inc., is **DISALLOWED.**