**Richard J. STEIN, Plaintiff,**

v.

**Paul JANOS, individually, Domenic J. Morabito, individually, Richard Slingerland, individually, Thomas Basher, Sr., individually, Sherwood Chorost, individually, Drew Fixell, individually, Julia Fullenwider, individually, Susan Sincero, individually, Erika Krieger, individually, Walter R. Scott, individually, George E. Clark, Jr., individually, and the Village of Tarrytown, New York, Defendants.**

No. 02 CIV. 01295(CM)(GAY).

United States District Court,
S.D. New York.

June 4, 2003.

Jonathan Lovett, Esq., Lovett & Gould, Esqs., White Plains, NY, for Plaintiff.

Paul Francis Clark, Wade, Clark, Mulcahy, Michael E. Peeples, Assistant Attorney General, New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

MCMAHON, District Judge.

Plaintiff Richard J. Stein brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against (1) Paul Janos, Domenic J. Morabito, Richard Slingerland, Thomas Basher, Sr., Sherwood Chorost, Drew Fixell, and Susan Sincero (hereinafter the "Village Defendants");[1] (2) Erika Krieger, Walter R. Scott, and George E. Clark, Jr. (hereinafter the "State Defendants"); and (3) the Village of Tarrytown, alleging defendants retaliated against him in violation of his rights under the First Amendment. All defendants move for summary judgment. Plaintiff moves, pursuant to Federal Rule of Civil Procedure 15(d), for permission to serve a supplemental complaint.

For the following reasons, defendants' motions are denied and plaintiff's motion is granted.

## FACTS

The following are the facts—either undisputed or interpreted most favorably to plaintiff, the nonmoving party—that are relevant for purposes of addressing defendants' motions for summary judgment.

Plaintiff Richard Stein was Tarrytown's building inspector from 1986 until his termination, by a unanimous vote of the Village's Board of Trustees, on September 3, 2002. [Plaintiff's 56.1 Statement ¶ 1]. Defendant Erika Krieger is an employee of the New York Department of State's Code Division ("Division"). [State Defendants' 56.1 Statement ¶ 1]. The Division's primary function is to administer the New York State Uniform Fire Prevention and Building Code ("Code"). *Id.* at ¶ 2. The Division's main office is in Albany, but it operates eleven regional offices for the convenience of local residents and local officials. *Id.* at 3. Krieger works at the Division's Peekskill Regional Office. *Id.* at 4.

On September 20, 2001, Stein attended a monthly meeting of the New York State Building Officials Conference, Inc. ("NYS-BOC"), a private professional association comprised largely of building inspectors. [Plaintiff's 56.1 Statement ¶ 2; Village Defendants' 56.1 Statement ¶¶ 27–30]. Krieger also attended the meeting and gave a talk concerning the newly-updated Code, which was scheduled to go into effect on January 1, 2002. [Plaintiff's 56.1 Statement ¶ 4–5; Village Defendants' 56.1 Statement ¶¶ 32–34]. At some time during or after Krieger's remarks, Stein expressed his opinion that (1) the Department of State had failed to adequately train building Code enforcement officers with respect to the new Code or even provide them with a copy of it; and (2) the World Trade Center collapse (which had occurred nine days earlier) occurred due to deficiencies in the then-existing Code. [Plaintiff's 56.1 Statement ¶¶ 5–6].

Following the meeting, Krieger told defendant Walter Scott, the Department of State's Assistant Director for Regional Services, about what had occurred.

---

1. Plaintiff has discontinued his suit against Julia Fullenwider. [Plaintiff's Memorandum of Law 1 n. 1].

[Plaintiff's 56.1 Statement ¶ 9]. Scott then contacted defendant George Clark, the Department of State's Director of Building Codes and Enforcement. *Id.* at ¶ 10. Scott and Clark agreed that they would terminate the Village of Tarrytown's privileges regarding access to code enforcement support services at the Peekskill Regional Office and require the Village to secure such services through the Division's Albany office. *Id.* Scott and Clark drafted a letter to that effect and sent it to Paul Janos, the Mayor of the Village of Tarrytown. *Id.* at ¶ 11. Clark called Janos to apprise him of the letter's content and impending arrival. [State Defendants' 56.1 Statement ¶ 44].

Janos gave the letter to Richard Slingerland, the Village Administrator, who began to look into the matter. *Id.* at ¶¶ 14–15. Slingerland spoke with Krieger sometime thereafter. Krieger told Slingerland about Stein's comments at the September 20 meeting, and Slingerland asked her to talk to her supervisors about reconsidering their decision regarding the Village's access to the Peekskill Regional Office. He also told Krieger that the village intended to "take appropriate action against" Stein. *Id.* at ¶¶ 16–17.

Slingerland also contacted Scott. [State Defendants' 56.1 Statement ¶ 46]. He apologized for the "personal discomfort" that Stein's comments had caused Krieger, told Scott that "we would be taking appropriate action to see that such an event did not occur again," and asked him to reconsider the decision requiring the Village to work through the Division's Albany office. [Plaintiff's 56.1 Statement ¶ 18].

On October 18, 2001, Slingerland brought disciplinary charges against Stein and suspended him without pay for thirty days. [Plaintiff's 56.1 Statement ¶ 20]. On October 31, 2001, the Village Board of Trustees (which included defendants Ja-nos, Morabito, Basher, Chorost, Fixell, and Sincero) voted to appoint Vincent D'Andrea as hearing officer for the disciplinary proceedings against Stein. *Id.* at 21. D'Andrea recommended that the Village terminate Stein, and the Board of Trustees voted to do so on September 3, 2002. *Id.* at 22.

Plaintiff filed this suit on February 19, 2002, alleging a sole claim against all defendants: They violated his First Amendment rights by retaliating against him for the comments he made at the September 20, 2001 meeting.

### DISCUSSION

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has made such a showing, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material

in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

■ To prevail on a First Amendment retaliation claim, a public employee must establish that (1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) there was a causal connection between the speech and the adverse employment action. *See Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir.2003). If a plaintiff produces evidence of these three elements, a defendant may escape liability on either of two separate rationales. First, the defendant "may show that plaintiff's speech was likely to disrupt the government's activities, and the likely disruption was 'sufficient to outweigh the First Amendment value of plaintiff's speech.'" *Id.* (quoting *Locurto*, 264 F.3d at 166). Second, the defendant may prevail "by demonstrating by a preponderance of the evidence that [he] would have taken the same adverse action in the absence of the protected speech." *Id.* (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999)).

The Village Defendants, State Defendants, and Village of Tarrytown offer shared arguments in support of their motions for summary judgment, as well as arguments particular to their individual circumstances. All defendants concede, for purposes of this motion, that plaintiff's speech addressed a matter of public concern and plaintiff suffered an adverse employment action. They argue, however, that no reasonable jury could find that there was a causal connection between plaintiff's speech and the adverse employment action. The Village of Tarrytown argues that it cannot be held liable as a municipality under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny. The State Defendants argue that plaintiff cannot establish that they entered into a conspiracy to retaliate against Stein. And both the Village Defendants and State Defendants contend that they are entitled to qualified immunity. I address these arguments in turn.

## I. *Causation*

■ To show a causal connection, there must be sufficient evidence to support an inference that the protected speech was "a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Morris*, 196 F.3d at 110. "Causation can be established either indirectly by means of circumstantial evidence, ... or directly by evidence of retaliatory animus." *Id.* (citing *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)).

Defendants do not dispute that Stein was suspended, and eventually terminated, at least in part because of what transpired at the September 20 meeting. They argue, however, that plaintiff suffered these adverse employment actions because of his confrontational and unprofessional conduct toward Krieger, not because of the content of his speech. They also point to evidence that plaintiff had a history of such behavior. Slingerland testified, for example, that Stein had raised his voice to him on five separate occasions and issued plaintiff a "final warning" in the summer of 2001. [State Defendants' 56.1 Statement ¶¶ 9–12; Village Defendants' 56.1 Statement ¶¶ 5–26].

■ But timing alone—i.e., when an adverse employment action follows closely in time a plaintiff's protected speech—can serve as circumstantial evidence of causa-

tion. *See Gorman–Bakos v. Cornell Cooperative Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir.2001); *Scheiner v. New York City Health & Hospitals*, 152 F.Supp.2d 487, 496 (S.D.N.Y.2001). The facts here more than suffice to create a genuine issue of material fact regarding causation.

## II. *Municipal Liability*

In order to hold the Village of Tarrytown liable under Section 1983, plaintiff must prove that a municipal "policy" or "custom" caused the deprivation of his First Amendment rights. *See Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018 (1978). A plaintiff can establish the existence of a policy or custom in a number of ways. *See Maneely v. City of Newburgh*, 256 F.Supp.2d 204, 212 (S.D.N.Y.2003). Specific acts taken by persons whose activities reflect official policy, for example, may constitute a custom or policy for Section 1983 purposes. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Mandell*, 316 F.3d at 385. Thus, plaintiff argues that Janos (the Mayor of Tarrytown), the Village's Trustees (Basher, Chorost, Fixell, and Sincero), and Slingerland (the Village Administrator) are municipal officials with "final policymaking authority" and their actions may subject the Village of Tarrytown to Section 1983 liability.

■ "[T]he issue of final policymaking authority is a legal issue to be determined on the basis of state law rather than a factual issue to be decided at trial." *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1348–49 (2d Cir.1994). Thus, "[t]he matter of whether the official is a final policymaker under state law is 'to be resolved by the judge before the case is submitted to the jury.'" *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir.2000) (quoting *Jett v. Dallas Independent School District*, 491

U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)) (emphasis omitted). In making that determination, "the court must 'ask whether [the] government official [is a] final policymaker[ ] for the local government in a particular area, or on [the] particular issue' involved in the action." *Id.* (quoting *McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)).

I cannot determine who had final authority to make policy concerning Stein's employment for the Village of Tarrytown, because, as usual, neither party has briefed the issue—not defendants as movants and not plaintiff in rebuttal. Common sense suggests that either the Mayor, Village Trustees, or Village Administrator is likely to have such authority—if not, there would appear to be a gaping hole in the Village's administrative organization. But I cannot make decisions in a vacuum. The Village's motion for summary judgment is denied without prejudice; when someone bothers to direct me to the appropriate law (at trial), I will address it.

## III. *Conspiracy*

The State Defendants argue that no reasonable jury could find that they conspired to retaliate against Stein because of his speech.

■ To establish a conspiracy under Section 1983, a plaintiff must prove either by direct or circumstantial evidence (1) the existence of an agreement between two or more state actors (or a state actor and a private entity); (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of the goal. *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999). To survive a motion for summary judgment, plaintiff's evidence of a Section 1983 conspiracy "must, at least, reasonably lead to the inference that [the defendants] positively

or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996), *cited in Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 131 (2d Cir.1997).

Stein has adduced evidence tending to establish that (1) Clark and Scott (both State Defendants) decided to make the Village of Tarrytown work through the Division's Albany office because of what transpired at the September 20 meeting; (2) they spoke and sent a letter to Janos regarding that decision; (3) Janos referred the matter to Slingerland; (4) Slingerland told Scott that the village would "be taking appropriate action to see that such an event did not occur again" and asked Scott to reconsider his and Clark's decision. Stein also provides evidence that Slingerland had a similar conversation with Krieger.

Village Trustee Domenic Morabito also testified that he spoke with Clark after Scott told the Village it had to work through the Division's Albany office. Morabito "called him to apologize if there was any misunderstanding with the meeting, then could they not think—that we could maybe get Peekskill back rather than going to Albany for any decisions." [Peeples Decl., Ex. H, at 118]. Morabito also called Krieger and "had the same conversation to see if we could get back into Peekskill." *Id.* at 125.

[8] In addition, the Division allowed the Village to work through its Peekskill office after Stein was suspended. [Nicaj Affirmation, Ex. 5, at 94; Ex. 6, at 44–45]. A reasonable jury could infer from this evidence that the State and Village Defendants reached an agreement, at least tacitly, whereby the State Defendants would allow the Village Defendants to work through the Peekskill office if they disciplined Stein. And, as described above, a jury could also find that the content of Stein's speech motivated the defendants. Summary judgment is thus precluded.

## IV. *Qualified Immunity*

■ The qualified immunity doctrine shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir.1998). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the objective reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Glass v. Mayas*, 984 F.2d 55, 57 (2d Cir.1993).

■ To determine whether a right was clearly established, a court must consider "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991). "For over 30 years the Supreme Court has consistently held that while the government enjoys significantly greater latitude when it acts in its capacity as employer than when it acts as sovereign, the First Amendment nonetheless prohibits it from punishing its employees in retaliation for the content of their protected speech." *Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir.2001).

In addition, "where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." *Locurto,* 264 F.3d at 169. In *Mandell v. County of Suffolk,* 316 F.3d 368 (2d Cir. 2003), the Second Circuit ruled:

> Where the specific intent of a defendant is an element of plaintiff's claim under clearly established law, and plaintiff has adduced sufficient evidence of that intent to defeat summary judgment, summary judgment on qualified immunity grounds is inappropriate. In the present case retaliatory intent is an element of plaintiff's claim, and we have already noted that plaintiff's evidence of retaliatory animus is sufficient to make defendants' motivation a triable issue of fact. Until that issue is resolved by a factfinder, therefore, the retaliation claim against defendant [police commissioner] cannot be dismissed on qualified immunity grounds.

*Id.* at 385. Here, there is a triable issue of fact as to whether retaliatory animus motivated defendants' conduct toward plaintiff. I therefore cannot dismiss plaintiff's claim on qualified immunity grounds as against either the Village or State Defendants.

## V. Plaintiff's Motion for Leave to Serve a Supplemental Complaint

Plaintiff moves for permission to serve a supplemental complaint in which he adds a new factual section detailing Stein's termination, and an additional First Amendment claim that accrued after he filed the original complaint. In that claim, Stein alleges that the Village Defendants and Village of Tarrytown fired him on September 3, 2002 for filing this lawsuit.

The Federal Rules of Civil Procedure provide that a court may permit a party "to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed.R.Civ.P. 15(d). Motions seeking leave under Rule 15(d) are evaluated under the same liberal standard as a motion for leave to amend under Rule 15(a). *See Islamic Society of Fire Dep't Personnel v. City of New York,* 205 F.Supp.2d 75, 80 (E.D.N.Y. 2002) (citing 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.30 (3d ed.2000)). The decision whether to grant or deny a motion for leave to amend a complaint is within the sound discretion of the trial court. *See, e.g., Krumme v. West-Point Stevens, Inc.,* 143 F.3d 71, 88 (2d Cir.1998).

I see no reason to deny plaintiff the opportunity to serve a supplemental pleading. Plaintiff moved for leave to amend on October 21, 2002 and could have made his motion as early as September 4 (almost seven weeks earlier), but his delay was not inordinate. And his delay will not prejudice defendants, because—while I cannot imagine that defendants need any additional discovery on this new claim—I hereby give defendants thirty days to explain their needs to the Magistrate Judge. If they can convince him that additional discovery is necessary, they may take it. Plaintiff does not claim to need any additional discovery and is permitted none.

## CONCLUSION

Defendants' motions for summary judgment are denied, and plaintiff's motion seeking leave to serve a supplemental pleading is granted.

This is the decision and order of the Court.