Leroy Edward GREEN, Plaintiff-Appellant,

v.

Camilla MARAIO and Angelo J. Ingrassia, Defendants-Appellees.

No. 1178, Docket 83–2023.

United States Court of Appeals, Second Circuit.

Argued April 26, 1983.

Decided Nov. 7, 1983.

---

Leroy Edward Green, pro se.

Robert Abrams, Atty. Gen., State of N.Y., New York City (George D. Zuckerman, Deputy Sol. Gen., Gerald J. Ryan, Asst. Atty. Gen., Ellen S. Weisburd, Deputy Asst. Atty. Gen., of counsel, New York City), for defendants-appellees.

Before KEARSE, PIERCE and PECK,* Circuit Judges.

* Senior Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

PIERCE, Circuit Judge:

Plaintiff appeals from an order of the United States District Court for the Southern District of New York, entered December 29, 1982, by Charles L. Brieant, *Judge,* granting defendants' motions to dismiss plaintiff's 42 U.S.C. § 1983 *pro se* complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted.

## I. BACKGROUND

Green is presently incarcerated at the Auburn Correctional Facility, Auburn, New York. He is serving three concurrent state sentences of eighteen years to life imprisonment for the crimes of attempted rape in the first degree, sexual abuse in the first degree and robbery in the second degree.

The criminal charges against plaintiff were tried in a jury trial, in a New York State court, which commenced on October 15, 1973. The defendants-appellees herein are: Orange County Court Judge Angelo J. Ingrassia and the official court reporter, Camilla Maraio. In his *pro se* complaint, dated August 27, 1982, Green set forth the following allegations which, for purposes of deciding the issues herein, we assume to be true.[1]

Yetta Pasachoff was the first of twelve regular jurors selected on October 15th, and, as required by law, she was designated jury "foreman."[2] James Stegall was the sixth juror selected. The trial continued, with Judge Ingrassia presiding, until October 19, 1973, when the presentation of evidence was concluded, the jury was instructed, and it began deliberations. The jury returned that day for further instructions and re-reading of portions of the trial testimony. Seated in the chair reserved for the jury foreman, Stegall, instead of Pasachoff, requested further instructions and re-reading. Shortly thereafter, the jury returned a verdict of guilty which was confirmed upon the jury being polled at the request of defense counsel. The announcement of the

jury's verdict was rendered by Stegall who was occupying the seat reserved for Pasachoff, who had switched to Stegall's seat.

Sentence was imposed on December 4, 1973. Green alleges that sometime during the period from December 5, 1973, to January 4, 1974, the court reporter, Maraio, was instructed by Judge Ingrassia to alter the record of Green's trial to indicate that Pasachoff had requested the instructions and re-reading of testimony; that Pasachoff had announced the guilty verdict at the conclusion of the jury's deliberations; that the jurors' votes upon polling were consistent with the verdict as announced by Pasachoff; and that Pasachoff had sat at all times in the seat reserved for the jury foreman. Green alleges that Maraio made these changes, as directed. Green seeks damages totalling three million dollars.

On October 25, 1982, the defendants moved to dismiss Green's complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. Judge Brieant granted the motions and dismissed the complaint, holding that the "[d]efendants are immune from civil liability for money damages." Following entry of the December 27 and 29, 1982, rulings, Green timely filed a notice of appeal. For the reasons which follow, we affirm.

## II. DISCUSSION

The issue presented on appeal is whether the district court erred in granting the defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). We hold that the district court did not err and that the decision should be affirmed.

■ Initially, we note that a motion to dismiss for failure to state a claim tests only the sufficiency of a complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Further, a motion for failure to state a claim should

---

1. *See, e.g., Fine v. City of New York,* 529 F.2d 70, 74 (2d Cir.1975).

2. New York State law prescribes that "[t]he juror whose name was first drawn and called must be designated by the court as the foreman." N.Y.Crim.Proc.Law § 270.15(3) (McKinney 1982).

not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Anderson v. Coughlin,* 700 F.2d 37, 40 (2d Cir.1983). We also note, briefly, that a claim for relief under 42 U.S.C. § 1983 [3] only need allege that some person acting under color of state law deprived the claimant of a federal right. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

Green's complaint alleges that Judge Ingrassia and the court reporter, Maraio, by altering his trial transcript, were acting under color of state law and deprived him of his procedural due process right to an accurate transcript on appeal.[4] The district court determined that Judge Ingrassia and Maraio were immunized from any "civil liability for money damages" assuming proof of the allegations of the complaint. We agree.

### A. Judicial Immunity

"[I]mmunity is a judicially developed limitation on the protection established by Congress in 42 U.S.C. § 1983." *Henriksen v. Bentley,* 644 F.2d 852, 854–55 (10th Cir. 1981). The doctrine of judicial immunity has been an established principle in American jurisprudence since *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). In *Bradley,* the Court wrote that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* at 351.[5] The doctrine of judicial immunity

was deemed applicable to section 1983 actions in *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 1967) (judge immune from liability for damages).

■ A judge defending against a section 1983 action is entitled to absolute judicial immunity from damages liability for acts performed in his judicial capacity. *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 734–35, 100 S.Ct. 1967, 1975–76, 64 L.Ed.2d 641 (1980); *see also Stump v. Sparkman,* 435 U.S. 349, 360, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978).

[T]he factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity.

*Id.* at 362, 98 S.Ct. at 1107.

Judicial immunity has been universally approved "[d]espite the unfairness to litigants that sometimes results." *Id.* at 363, 98 S.Ct. at 1108. Such immunity is not for the protection of malicious and corrupt judges, but for the overall benefit of the public. *Pierson,* 386 U.S. at 554, 87 S.Ct. at 1217. The commonwealth is best served by having judges who can perform their judicial functions with independence and free of concern for personal liability as a consequence. *Id.* "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own

---

**3.** Section 1983 states in pertinent part:
Every person who, under color of [state law] ... subjects ... any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured .... 42 U.S.C. § 1983 (Supp. V 1981).

**4.** *See, e.g., Chessman v. Teets,* 350 U.S. 3, 76 S.Ct. 34, 100 L.Ed. 4 (1955), *judgment on the merits after remand,* 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957).

**5.** The Supreme Court initially discussed judicial immunity in *Randall v. Brigham,* 74 U.S. (7

Wall.) 523, 19 L.Ed. 285 (1869). In *Randall,* the Court wrote that judges of superior or general jurisdiction were "not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, unless perhaps where the acts, in excess of jurisdiction, are done maliciously or corruptly." *Id.* at 536. However, in *Bradley,* the Court determined that the qualifying words—"unless perhaps where the acts, in excess of jurisdiction, are done maliciously or corruptly"—were not necessary. *Bradley,* 80 U.S. (13 Wall.) at 351.

convictions, without apprehension of personal consequences to himself." *Bradley,* 80 U.S. (13 Wall.) at 347. Judicial immunity recognizes that a judge may err. However, the policy behind the defense also recognizes that it is better for a judge when exercising the discretion inherent in his judicial power "to risk some error and possible injury from such error than not to decide or act at all." *Scheuer,* 416 U.S. at 242, 94 S.Ct. at 1689; *see also Marty's Adult World of New Britain, Inc. v. Guida,* 453 F.Supp. 810, 815 (D.Conn.1978) (judicial immunity is required in order to protect the discretion necessary for the proper use of the judges' decision-making powers).

Green raises two principal arguments regarding the district court's determination that Judge Ingrassia was immunized from money damages arising from civil liability under section 1983. First, Green contends that Judge Ingrassia's acts were "in clear absence of personal jurisdiction." Therefore, Green argues, Judge Ingrassia could not successfully assert the defense of judicial immunity.

Although it may be argued that once Green was sentenced the trial judge no longer had personal jurisdiction over Green and the case, Judge Ingrassia did possess subject matter jurisdiction. As demonstrated in *Bradley,* and by the Supreme Court's approving citation of *Bradley* in *Stump,* 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7,[6] it is apparent that a judge who possesses subject matter jurisdiction is not within the "clear absence of all jurisdiction" posture which would deprive him of the use of the defense of judicial immunity.[7] Judge Ingrassia—assuming, of course, for purposes of this appeal that all the allegations of the complaint are true—was not bereft of all jurisdiction, although such acts would be in excess of his jurisdiction. As explained in *Bradley,* and its progeny, a judge who acts in excess of his jurisdiction is still entitled to rely on the defense of judicial immunity. While we do not sanc-

**6.** In *Stump,* the Court referred to an illustration in *Bradley* which distinguished between lack of jurisdiction and excess of jurisdiction. *Stump,* 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7. The Court in *Bradley* stated:

A distinction must be here observed between excess of jurisdiction and the *clear absence of all jurisdiction over the subject-matter.* Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked.

80 U.S. (13 Wall.) at 351–52 (emphasis added).

**7.** Green's contention, and confusion, apparently stems from the following passage in *Stump v. Sparkman:* "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" 435 U.S. at 356–57, 98 S.Ct. at 1105 (quoting in part *Bradley,* 80 U.S. (13 Wall.) at 351). The passage was not written in a vacuum, but was cited in conjunction with a footnote which discussed subject matter jurisdiction. 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7. Further, the fuller *Bradley* quote reads "clear absence of all jurisdiction *over the subject-matter." Bradley,* 80 U.S. (13 Wall.) at 351 (emphasis added). *See supra* note 6.

tion the type of acts complained of herein, this is the type of conduct which was intended to be included within the reach of the doctrine of judicial immunity. If the allegations of the complaint are true, then Judge Ingrassia erred. However, for the broad policy reasons discussed above, this is not the type of error which would defeat use of the defense of judicial immunity.[8]

■ Green next contends that the district court erroneously dismissed the suit based on the immunity defense without first conducting a hearing to determine Judge Ingrassia's motivations for his actions, or the scope of immunity to which he was entitled. This contention is without merit. The Supreme Court has established that " 'judges defending against § 1983 actions enjoy *absolute* immunity for acts performed in their judicial capacities.' " *Dennis,* 449 U.S. at 27, 101 S.Ct. at 186 (quoting *Consumers Union of the United States, Inc.,* 446 U.S. at 734–35, 100 S.Ct. at 1976) (emphasis added); *see also Pierson,* 386 U.S. at 554, 87 S.Ct. at 1217. "An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman,* 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1976). Since we have determined, in discussing Green's first contention (clear absence of personal jurisdiction), that Judge Ingrassia had subject matter jurisdiction and thus was within the scope of his absolute judicial immunity, we conclude that the district court did not err by dismissing the suit as to him based on the defense of judicial immunity without first conducting a hearing.

### B. Court Reporter Immunity

■ We also hold that the district court did not err in dismissing Green's complaint as to the court reporter, Maraio, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state

a claim upon which relief could be granted. Maraio acted pursuant to Judge Ingrassia's explicit instructions and thus is immunized from liability under section 1983 by the defense of qualified immunity for actions carried out within the scope of those instructions. *Slavin v. Curry,* 574 F.2d 1256, 1265–66 (5th Cir.), *petition for reh'g en banc denied,* 583 F.2d 779 (5th Cir.1978), *aff'd after remand to the district court,* 690 F.2d 446 (5th Cir.1982); *Mourat v. Common Pleas Court of Lehigh County,* 515 F.Supp. 1074, 1076 (E.D.Pa.1981).

■ Green contends that the existence of any immunity defense for Maraio depends on her position and her motivation for the alleged actions. Green, therefore, concludes that the district court erred by extending qualified immunity to Maraio without first holding a hearing for the purpose of determining whether Maraio's motivations entitled her to defense of "good faith." Green is wrong.

■ Usually, the defense of qualified immunity cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted. *Sims v. Adams,* 537 F.2d 829, 832 (5th Cir.1976). The Supreme Court has emphasized:

> The procedural difference between the absolute and qualified immunities is important. An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity. The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial.

*Imbler,* 424 U.S. at 419 n. 13, 96 S.Ct. at 989 n. 13. This distinction was drawn because "[i]t is the existence of reasonable grounds for the belief formed at the time and in

---

**8.** In addition to policy considerations, our review of the cases supports the view that the instant situation does not fall into the category of cases where judicial immunity has been found not to exist. *See, e.g., Gregory v. Thompson,* 500 F.2d 59, 64 (9th Cir.1974) (judge who physically assaults a person in courtroom is not absolutely immune from liability); *Lynch v. Johnson,* 420 F.2d 818, 820–21

(6th Cir.1970) (judge not protected by judicial immunity for jailing a fellow board member when judge was acting in a legislative capacity); *Wade v. Bethesda Hospital,* 337 F.Supp. 671, 673–74 (S.D.Ohio 1971) (judge in clear absence of jurisdiction for ordering sterilization without statutory authority), *judgment upon reconsideration,* 356 F.Supp. 380 (S.D.Ohio 1973).

light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity ... for acts performed in the course of official conduct." *Scheuer,* 416 U.S. at 247–48, 94 S.Ct. at 1692, *see also Gomez,* 446 U.S. at 641, 100 S.Ct. at 1924; *Wood v. Strickland,* 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975).

However, in this case, there are several reasons why Maraio's defense of qualified immunity *can* support the grant of a Fed.R. Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted. First, Green's own complaint alleges that Maraio, in her capacity as a court reporter, acted pursuant to the judge's instructions. Thus, the complaint itself establishes the circumstances required as a predicate to a finding of qualified immunity and, consequently, there is no reason to require an answer, a hearing or a trial. *See Harlow v. Fitzgerald,* 457 U.S. 800, 807–08, 102 S.Ct. 2727, 2732–33, 73 L.Ed.2d 396 (1982). Once it was established that the basis for Maraio's action was the judge's instructions, inquiry into other questions of motivation or good faith became unnecessary.

Further, allowing a Fed.R.Civ.P. 12(b)(6) dismissal whenever the basis for finding qualified immunity applicable is established by the complaint itself "permit[s] '[i]nsubstantial lawsuits [to] be quickly terminated.' " *Id.* at 814, 102 S.Ct. at 2736 (quoting *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)); *see also Hanrahan v. Hampton,* 446 U.S. 754, 765, 100 S.Ct. 1987, 1993, 64 L.Ed.2d 670 (1980) (noting that *Butz* "cautioned the judiciary to exercise their authority under the rules of procedure in order to protect official defendants from groundless claims") (Powell, J., concurring in part and dissenting in part); *cf. Briscoe v. Lahue,* —— U.S. ——, 103 S.Ct. 1108, 1120, 75 L.Ed.2d 96 (1983) ("even the processing of a complaint that is dismissed before trial consumes a considerable amount of time and resources").

Last, we note that dismissal pursuant to Fed.R.Civ.P. 12(b)(6) was proper as to Maraio "[s]ince judges are immune from suit for their decisions, [and therefore] it would be manifestly unfair to hold liable the min-

isterial officers who carry out the judicial will." *McCray v. State of Maryland,* 456 F.2d 1, 5 n. 11 (4th Cir.1972). Maraio is alleged by Green to have altered Green's transcript pursuant to Judge Ingrassia's explicit instructions. Clearly, it was the judge's decision to make the change, not the court reporter's. Under these circumstances, it would be manifestly unfair to allow Maraio to be subjected to liability when she was acting within the scope of the judge's instructions and was simply acting as an arm of the court in compliance with the exercise of *his* judicial authority.

We have considered Green's other contentions and find that they merit no discussion.

### CONCLUSION

For the foregoing reasons, we affirm the order of the district court granting each defendant's Fed.R.Civ.P. 12(b)(6) motion to dismiss plaintiff's 42 U.S.C. § 1983 complaint.