**SAFFIRE CORPORATION, Plaintiff,**

v.

**NEWKIDCO., LLC., Defendant.**

**No. 02 Civ. 8550(RWS).**

United States District Court,
S.D. New York.

Oct. 7, 2003.

Queller, Fisher, Dienst, Serrins, Washor & Kool by Jeffrey D. Powell, Bracken, Margolin & Gouvis, New York City, for Plaintiff.

Meister Seelig & Fein by Racquel Crespi Weintraub, New York City, for Defendant.

## OPINION

SWEET, District Judge.

Plaintiff Saffire Corp. ("Saffire") has moved for summary judgment against defendant Newkidco., LLC ("Newkidco") pursuant to Federal Rule of Civil Procedure 56(b). Saffire further has moved to amend the caption of this case.

For the reasons set forth below, Saffire's motion for summary judgment is granted, as is its motion to amend the caption.

### Prior Proceedings

This action was commenced on October 25, 2002 when Saffire filed its complaint. Newkidco served its answer on or about December 16, 2002. For the next several months, the parties attempted to settle this action, but settlement negotiations bogged down. On June 2, 2003, Saffire moved for summary judgment, and on or about June 13, 2003, Newkidco served its First Set of Requests for Documents and First Set of Interrogatories, responses to which were due on or about July 19, 2003.

Saffire's motion for summary judgment was marked fully submitted on July 25, 2003.

### The Parties

This is a diversity case. Saffire is a Utah corporation with offices in American Fork, Utah. Newkidco is a Delaware limited liability company with offices in New York and authorized to conduct business in New York.

### The Facts

The facts are set forth based upon the Local Rule 56.1 statements of the parties and supporting declarations.

Saffire is a computer software development company engaged in such projects as electronic video game development. On or about December 11, 2001, Newkidco engaged Saffire to develop a Little League Baseball game (the "Game") on the Nintendo Game Cube platform. The original agreement provided for progress payments based upon completion of various milestones by Saffire. Saffire alleges that while it performed its obligations and completed milestone deliveries on time, Newkidco fell behind on its payments.

The original agreement was replaced with a new agreement on or about April 25, 2002 ("Revised Agreement"). In the Revised Agreement, Newkidco acknowledged satisfactory completion of certain milestones and agreed to a schedule of payments for these and subsequently completed milestones. The Revised Agreement was fully integrated, stating:

[This agreement] constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes and replaced any and all prior contemporaneous agreements with respect to the subject matter hereof, whether written or oral between the parties.

(Revised Agreement at 4.) It further continues, "No modification ... shall be of any force or effect unless made in writing and signed by the parties hereto." *Id.*

In both the original and revised agreements, Saffire agreed to have certain key personnel work on the development of the Game.

Newkidco made the first payment under the Revised Agreement and then a partial payment of the second payment due. In all, Newkidco paid $125,000 of the $320,000 of the acknowledged debt. Saffire also completed another milestone delivery on or about June 28, 2002, but Newkidco never paid for this milestone.

On July 15, 2002, Saffire gave notice of default. Newkidco advised Saffire that it was unable to make the payments required under the agreement. After unsuccessful attempts to settle the matter, Saffire commenced a breach of contract action.

### New York Law Applies

 The written agreement between the parties specifies that it is governed by the internal laws of New York. "[A]s a general rule, choice of law provisions ... are valid and enforceable in [New York]." *Marine Midland Bank, N.A. v. United Missouri Bank,* N.A., 223 A.D.2d 119, 122–23, 643 N.Y.S.2d 528, 530 (1st Dep't 1996) (citations omitted). As long as a transaction bears a reasonable relation to New York, the parties may agree to have New York law govern their rights and duties. New York Uniform Commercial Code ("UCC") § 1–105; *Terwilliger v. Terwilli-* *ger,* 206 F.3d 240 (2d Cir.2000). The agreement was executed in New York, and the completed milestone was delivered to Newkidco in New York. New York law should, therefore, be applied in this case.

### The Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see generally* 6 James Wm. Moore, et al., Moore's Federal Practice ¶ 56.15 (2d ed.1983). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of showing that there are no material facts in dispute, and the court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *Bickhardt v. Ratner,* 871 F.Supp. 613 (S.D.N.Y.1994) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."

*Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997).

■ The burden on the moving party is greater in cases where discovery is incomplete. Rule 56(b) contemplates that summary judgment will be granted only "after adequate time for discovery." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Park Ave. Bank, N.A. v. Bankasi,* No. 93 Civ. 1483, 1995 WL 739514, at *1 (S.D.N.Y. Dec. 13, 1995) ("Summary judgement is strongly disfavored prior to the parties having had an adequate opportunity for discovery.").

■ However, the non-movant cannot escape summary judgment "merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quotations omitted). A party opposing summary judgment on the ground that further discovery is necessary to defeat the motion, must show (1) what facts are sought to resist the motion and how they will be obtained; and (2) how those facts are reasonably expected to create genuine issue of material fact. *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir. 1995). The existence of disputed facts that are "immaterial to the issues at hand" is "no impediment to summary judgment." *W. World Ins.,* 922 F.2d at 121.

Here, Newkidco requests documents and information in connection with the following:

(1) the work allegedly performed by Saffire;

(2) negotiations between Saffire and Newkidco concerning the original and revised agreements;

(3) the milestone allegedly delivered by Saffire;

(4) attempts made by Saffire to mitigate any damages it allegedly sustained; and,

(5) personnel who worked on the development of the Game.

As explained below, this additional information is unnecessary for a determination of this motion.

**Breach of Contract**

■ To prevail on a breach of contract claim under New York law, a plaintiff must prove the following elements: (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. *Terwilliger,* 206 F.3d at 245–46.

■ Here, there is no dispute that the Revised Agreement, dated April 25, 2002, is a valid and binding contract. In this agreement, Newkidco acknowledged milestones already completed by Saffire (the Concept Development and the First Visual and Design Document milestones) and acknowledged owing Saffire $320,000. Saffire agreed to perform additional services, and Newkidco agreed to make payments for prior completed services and for additional work performed. This agreement was negotiated by sophisticated commercial entities and duly executed, and a valid contract was formed. *See* U.C.C. § 2–204.

Second, Saffire performed its obligations under the Revised Agreement. On or about June 28, 2002, Saffire timely completed and delivered the Rough Playable & Prototype to Newkidco. Newkidco accepted this milestone. Both the Original and Revised Agreement expressly provide that if Newkidco "does not notify [Saffire] of either acceptance or rejection within [a] seventeen (17) day period, the milestone shall be deemed accepted." (Original Agreement at 3–4; Revised Agreement at

4.) No notice of non-acceptance or revocation was ever given.

Under § 2–602 of the Uniform Commercial Code ("UCC"), rejection of goods must be made within reasonable time after delivery and it is ineffective unless the buyer notifies the seller of rejection. Here, the parties had decided that seventeen days would be a reasonable time for the inspection of goods, and Newkidco did not inform Saffire of defects during this allotted period or at any time thereafter.[1] Newkidco further specifically acknowledged Saffire's previous work and its debt in the Revised Agreement. Saffire thus continued to perform work in reliance on Newkidco's acceptance, and Newkidco cannot now raise the defense of nonconforming goods.

Third, Newkidco defaulted on its payments. Newkidco made the first payment of $100,000 due under the Revised Agreement, but failed to make subsequent payments due. It only made a partial payment in the amount of $25,000 on or about June 20, 2002. Saffire gave notice of Newkidco's default by fax and mail on or about July 15, 2002.

Fourth, Saffire suffered damages from the breach since it performed services for which it received no compensation. Under the Revised Agreement, Newkidco agreed to pay Saffire a total of $2,000,000 in portions upon the occurrence of certain milestones. Newkidco paid $125,000 of the $320,000 of acknowledged debt, leaving a balance due of $195,000. Saffire also completed and delivered the "Rough Playable & Prototype" on or about June 28, 2002, but did not receive the $100,000 of payment for this milestone under the agreement. Thus, together with the unpaid debt, this comes out to $295,000 owed to Saffire by Newkidco.

The Revised Agreement further provides:

Publisher may also terminate the development of the Nintendo Game Cube (platform) version of the Game at any time, in which case Publisher would pay developer for milestones completed satisfactorily to date, along with the then current milestone in progress, along with a percentage of post shipment payments based on percentage of completion (amount of finished milestones divided by 1.125 million) of current development.

(Revised Agreement at 3.) Saffire claims that under this early termination provision it is entitled to an additional $100,00 for "First Playable," the current milestone due, and another $486,150 for "post ship payments." This would yield the total liquidated sum of $881,150. According to Saffire, the formula in this clause takes into account that Saffire had deferred part of the payment due for its work until the completion of the project. The parties thus agreed that upon early termination, Newkidco would pay Saffire an equitable portion of deferred payments as of the date of termination.

■ Newkidco argues that this provision is inapplicable here since Newkidco, the "Publisher," did not terminate the agreement. Newkidco asserts that at no time did it either give notice of termination or request Saffire to terminate the development of the Game.

However, the agreement was terminated by Newkidco's default on payments. The agreement requires the performance of both parties. Saffire could not continue meeting its milestones, while Newkidco stopped sending the payments specified in the agreement. Newkidco itself requests

---

1. Saffire asserts that by now Newkidco has had more than ample time to ascertain any defects in the goods and to identify them with specificity in its affidavits.

information on attempts made by Saffire "to mitigate any damages it allegedly sustained," seeming to acknowledge that Saffire should not continue performing and wracking up costs against it.

█ Furthermore, if Newkidco could avoid the obligations agreed to under the early termination provision by simply discontinuing payments, this would defeat the purpose of the provision and render it meaningless. Under traditional contract interpretation rules, a provision may not be interpreted in a manner which would render it an absurdity. *E.g., Galli v. Metz,* 973 F.2d 145, 149 (2d Cir.1992) (*citing Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 27 (2d Cir.1988)).

█ Newkidco additionally argues that the early termination provision represents an unenforceable penalty. If the amount of liquidated damages fixed is plainly or grossly disproportionate to anticipated loss discernible at the time of contracting, the provision calls for a penalty and will not be enforced. *Bigda v. Fischbach Corp.,* 849 F.Supp. 895, 902 (S.D.N.Y.1994); *Rattigan v. Commodore Int'l Ltd.,* 739 F.Supp. 167, 169–70 (S.D.N.Y.1990). Newkidco claims that the additional $486,150 for "post ship payments" represents more than value of the work that is currently in dispute.

This clause, however, is not penal if it takes into account the front loading of Saffire's work and the back-loading of Newkidco's payment. Where, as high-lighted by this case, cash flow is a critical issue for one of the parties, they can decide to defer certain payments until after a project's completion. Here, the last three payments under the agreement make up $875,000 of "post ship payments" and do not correspond with the completion of any milestones. The early termination clause thus was a fully negotiated provision that took the parties' payment structure into account and not a penalty clause.[2]

Newkidco further points out that this clause exists only in the Revised Agreement and not in the Original Agreement. It claims that this demonstrates the penal nature of the early termination clause and that an issue of material fact exists regarding the parties' intent in including the clause in the Revised Agreement.

█ The fact that the early termination clause only exists in the Revised Agreement does not point to its penal nature. Furthermore, there is no ambiguity or lack of clarity in the clause. The parties here decided to back-load payments so that the last three payments, totaling $875,000, would take place after the completion of all the milestones. The early termination clause takes this back-loading into account and sets out the formula under which payments would be calculated upon premature termination of the agreement. When a provision is clear and unambiguous, the subjective intent of the parties is irrelevant. *Klos v. Polskie Linie*

---

**2.** Mike Ricks, Saffire's CFO, testifies as follows with regards to the termination clause:
 During the negotiations for the December 11th Letter of Intent, and with respect to the Agreement, we had made it explicitly clear to the representatives of Newkidco that the project would require more work and expense to be incurred by Saffire than was to be billed and paid in accordance with the scheduled milestone payments. Newkidco had requested this billing format in order to defer some of its payments until after the project was completed. Saffire agreed to such deferment provided that if the project was terminated, it could recover payments for the amounts that had been deferred. Newkidco and Saffire agreed to a formula which allocated the amount to be paid upon termination in relative proportion to the amount of work to have been completed at the various stages or milestones.

*Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997). The terms of the agreement must be interpreted based on the plain meaning of the language used by the parties.

Similarly, the additional discovery requested by Newkidco is for extrinsic evidence unnecessary for an interpretation of the agreement. Extrinsic evidence is inadmissible to vary, add, or contradict the agreement. The content of negotiations, whether there were any delays in delivery, and attempts made by Saffire to mitigate damages are irrelevant to this case.

Moreover, under New York law, Saffire is entitled to a prejudgment interest from July 15, 2002 to the date of judgment at a rate of nine percent (9%), pursuant to CPLR § 50001(a). *Terwilliger,* 206 F.3d at 249.

### *Amendment of the Caption*

Saffire was incorrectly named in the agreements and in the caption as Saffire Corporation. Its proper and legal name is Saffire, Inc. Saffire alleges that no prejudice is suffered by Newkidco in correcting Saffire's name under Fed.R.Civ.P. 15(a) and 17, and none of the allegations need be changed. Newkidco submits no opposition, and the substitution of Saffire's correct name is granted.

### *Conclusion*

For the reasons set forth, Saffire's motion for summary judgment is granted, as is Saffire's motion to amend the caption.

Enter judgment on notice.

It is so ordered.