Vincent **FORRAS**, Plaintiff,

v.

Kevin **ANDROS**, et al., Defendants.

No. 04 CIV 3692 SCR.

United States District Court,
S.D. New York.

Sept. 29, 2005.

Jonathan Lovett, Lovett & Gould, White Plains, NY, Michael Howard Sussman, for Plaintiff.

Debora Anne Pitman, Wechsler & Cohen, LLP, Stewart G. Milch, Shandell, Blitz, Blitz & Bookson, LLP, Glenn Christopher Grattan, Saretsky Katz Dranoff & Glass LLP, Karen S. Drotzer, Armienti, Debellis & Whiten, New York City, Mark Alan Taustine, Smith Moore LLP, Greensboro, NC, Frank Catelli, Furey & Furey, Hempstead, NY, Robert Loren Boydstun, Jay Kenneth Margolis, Daniel Owen Dietchweiler, for Defendants.

### MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

Plaintiff, a former volunteer firefighter, claims that Defendants retaliated against

him for exercising his First Amendment rights in making public comments about the working conditions at Ground Zero in the days and weeks following the September 11th terrorist attacks. Defendants moved for a judgment on the pleadings under Fed.R.Civ.P. 12(c) or, in the alternative, for summary judgment. For the reasons discussed below, Defendants' motion is denied.

## I. Background

On September 11, 2001, the Plaintiff, Vincent Forras ("Plaintiff"), a volunteer firefighter with the South Salem Fire Department, went to Ground Zero to assist with the recovery efforts. (Compl.¶¶ 3, 12.) Plaintiff worked at Ground Zero for approximately three weeks. (Compl.¶ 13.) Plaintiff claims he became disabled from the dust and debris at the disaster site. (Compl.¶ 15.) Thereafter, Plaintiff was very outspoken about the illnesses of first responders at Ground Zero and other issues surrounding the terrorist attacks. (Compl.¶¶ 17–18.) His comments were widely publicized in the local and national media. *Id.*

Plaintiff claims that as a result of his comments, the South Salem Fire Department, Inc., the South Salem Fire District, then-Chief Kevin Andros, current Chief Joseph Posadas, then-Fire Commissioner Martin Surks, and South Salem Fire Department members Peter Ciacci, Sr., Keith Bauer, Paul Black, and Peter Ciacci, Jr. ("Defendants") retaliated against him. (Compl.¶¶ 19–23.) Plaintiff claims that Defendants collectively acted to stop him from making public comments and remove him from the Department. (Compl.¶ 22.) On April 22, 2002, Plaintiff was placed on restricted duty. (Andros Ex. 22.) On March 4, 2003, he was dropped from the Department's roster. (Compl.¶ 22.)

In response, Defendants claim that Plaintiff was dropped from the Department's roster because he was disabled and did not meet the requirements for an active firefighter as set forth in the South Salem Fire Department's Constitution and Bylaws. (Def. Mem. Supp. Summ. J. at 13, 15, 17.)

On May 14, 2004, Plaintiff filed a complaint against Defendants. Each Defendant answered in July 2004, filing cross-claims against other co-defendants and asserting a qualified immunity defense. While discovery has begun, it is not yet complete. Defendants now seek a motion for a judgment on the pleadings, or, in the alternative, for summary judgment.

## II. Discussion

### A. Standard of Review

#### 1. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In deciding a Rule 12(c) motion, a court applies the same standard of review that it would apply in deciding a motion under Rule 12(b)(6) for failure to state a claim. *See, e.g., Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001). In both situations, the reviewing court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *See, e.g., id.; Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004). " '[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' dismissal is

inappropriate."[1] *Leather v. Eyck*, 180 F.3d 420, 423 (2d Cir.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

 The Second Circuit has stressed that " '[t]his standard is applied with particular strictness when the plaintiff complains of a civil rights violation.' " *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir.1996) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998); *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994). "A claim for relief under 42 U.S.C. § 1983 only need allege that some person acting under color of state law deprived the claimant of a federal right." *Green v. Maraio*, 722 F.2d 1013, 1016 (2d Cir.1983).

 Defendants' motion for a judgment on the pleadings must be denied. In this complaint, Plaintiff alleges that, because of his public comments, Defendants "collectively agreed to engage (on behalf of the Department, the District and themselves) in a campaign to have Plaintiff become the first member of the Department in the Department's history to be terminated." (Compl.¶ 20.) The complaint goes on to allege that Defendants attempted to "stop Plaintiff from continuing that public expression of his concerns ... and warning him that should he not desist, 'things' would be made considerably worse for him ...." (Compl.¶ 22.) In response, each Defendant's answer asserts a qualified immunity defense. As discussed below, Plaintiff could prove a set of facts establishing both that Defendants' retaliated against him when he exercised his First Amendment rights and that Defendants are not entitled to qualified immunity for their actions. Therefore, this Court denies Defendants' motion for a judgment on the pleadings.

### 2. Motion for Summary Judgment

Because Defendants' motion for a judgment on the pleadings is denied, this Court will consider Defendants' motion for summary judgment.[2]

Summary judgment is appropriate only if "there is no genuine issue as to any material fact[.]" Fed.R.Civ.P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

---

1. The Second Circuit has also observed that retaliation claims are difficult to plead with particularity because "the question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir.1994). Moreover, Rule 9(b) of the Federal Rules of Civil Procedure states that "[m]alice, intent, knowledge and other conditions of mind ... may be averred generally." Fed.R.Civ.P. 9(b); *see also Gagliardi*, 18 F.3d at 195.

2. This Court will more thoroughly address Defendants' motion for summary judgment because a motion for judgment on the pleadings must be re-characterized as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court ...." Fed.R.Civ.P. 12(c). Defendants submitted exhibits to support their motion. This Court considered those exhibits. If a motion for judgment on the pleadings is treated as a motion for summary judgment, all parties must "be given reasonable opportunity to present all material made pertinent to such a motion ...." Fed.R.Civ.P. 12(c); *see also Gagliardi*, 18 F.3d at 191. Because Defendants made a motion for either a judgment on the pleadings or summary judgment, Plaintiff had a reasonable opportunity to present additional materials to oppose a summary judgment motion.

The initial burden falls on the moving party who is required to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" *Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir.1999) (quoting *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998)).

■ The "burden on the moving party is greater in cases where discovery is incomplete." *Saffire Corp. v. Newkidco, LLC,* 286 F.Supp.2d 302, 306 (S.D.N.Y. 2003). Rule 56(b) contemplates that summary judgment will be granted only "after adequate time for discovery." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *see also Wyler v. United States,* 725 F.2d 156, 160 (2d Cir.1983); *Park Ave. Bank, N.A. v. Bankasi,* No. 93 Civ. 1483, 1995 WL 739514, at *1 (S.D.N.Y. Dec. 13, 1995) ("Summary judgment is strongly disfavored prior to the parties having had an adequate opportunity for discovery."); *cf. Dusanenko v. Maloney,* 726 F.2d 82 (2d Cir.1984) (noting, while granting summary judgment for defendants, that the plaintiffs did not present affidavits or factual materials in response to Ds' motions to dismiss, "[n]or, apparently, did they request an opportunity to conduct discovery in order to obtain information with which to oppose the motion"). "If the court finds that a party opposing a summary judgment motion cannot present facts essential to justify the party's opposition, the court may ... deny the motion for summary

judgment ...." 11 James Wm Moore, et al., *Moore's Federal Practice* ¶ 56.10[8][a] (3d ed.2005).

■ A party opposing summary judgment on the ground that further discovery is necessary cannot, however, simply claim that they need more discovery. Rather, he or she "must show (1) what facts are sought to resist the motion and how they will be obtained; and (2) how those facts are reasonably expected to create genuine issue of material fact." *Saffire Corp.,* 286 F.Supp.2d at 306 (citing *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995)); *see also Wyler,* 725 F.2d at 160.

## B. First Amendment Retaliation

■ A public employee making a First Amendment retaliation claim under 42 U.S.C. § 1983 must demonstrate, by a preponderance of the evidence, that: "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment determination, so that it can be said that his speech was a motivating factor in the determination." *Cobb v. Pozzi,* 363 F.3d 89, 102 (2d Cir.2004) (quoting *Mandell v. County of Suffolk,* 316 F.3d 368, 382 (2d Cir.2003)); *see also Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999); *Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d Cir.2000).

■ Once the plaintiff establishes these three factors, the defendant must then show that he or she had one of two valid reasons for his or her action—the adverse employment determination—to avoid liability. The defendant may demonstrate, by a preponderance of the evidence, that that he or she "would have taken the same adverse action regardless of the protected speech." *Cobb,* 363 F.3d at 102; *see also Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct.

568, 50 L.Ed.2d 471 (1977); *Mandell,* 316 F.3d at 382; *Morris,* 196 F.3d at 110. In the alternative, the defendant may establish that the plaintiff's speech was "likely to disrupt the government's activities, and that the likely disruption was sufficient to outweigh the value of the plaintiff's First Amendment expression." *Cobb,* 363 F.3d at 102 (citing *Mandell,* 316 F.3d at 382–83). The second approach is "commonly known" as the *Pickering* balancing test. *Cobb,* 363 F.3d at 102; *see also Pappas v. Giuliani,* 290 F.3d 143, 145–46 (2d Cir.2002) (applying the *Pickering* balancing test after an employee established that he was terminated because of his protected speech).

### 1. Plaintiff Must Establish Three Factors

#### a. Plaintiff Has Demonstrated That His Speech Was a Matter of Public Concern

Generally, "speech on 'any matter of political, social, or other concern to the community' is protected by the First Amendment." *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999) (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). The question is "whether the speech at issue can 'be fairly characterized as constituting speech on a matter of public concern. . . . Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.' " *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 781 (2d Cir.1991) (quoting *Connick v. Myers,* 461 U.S. 138, 146–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). In determining whether the speech was a matter of public concern, a court "should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Lewis v. Cowen,* 165 F.3d 154, 163–64 (2d Cir.1999).

Plaintiff has sufficiently established that his comments about the impact of working at Ground Zero in the wake of the September 11th attacks were a matter of public concern. He has spoken about the illnesses suffered by "hundreds of first responders," the lack of proper equipment at Ground Zero, and other prominent issues surrounding the terrorist attack. (Compl.¶¶ 17–18.) His comments reflect a broad public purpose and do not merely redress personal grievances. *Cf. Rankin v. McPherson,* 483 U.S. 378, 386, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (holding that the comment "If they go for him again, I hope they get him" after hearing of an attempt on the life of the President was a matter of public concern). In fact, the very concerns raised by Plaintiff have become the basis of a national debate regarding the inadequacy of equipment at Ground Zero and the subsequent health of the first responders.

#### b. Plaintiff Has Established That He Suffered an Adverse Employment Decision

Plaintiff has suffered an adverse employment action. Adverse employment decisions can include termination, demotion, reduction in pay, reprimands, refusal to hire and refusal to promote. *Morris,* 196 F.3d at 110. Other, less severe, actions may also be considered to be adverse employment decisions. *Id.* (citing *Bernheim v. Litt,* 79 F.3d 318, 327 (2d Cir.1996)). Both Plaintiff and Defendants agree that Plaintiff was placed on restrictive duty and later removed from the Department's roster. There is little debate by any of the parties to this action that being placed on restrictive duty

and being dropped from the Department's roster are both adverse employment decisions.

### c. Plaintiff Has Shown a Sufficient Causal Connection Between His Speech and the Adverse Employment Decision

■ A plaintiff making a First Amendment retaliation claim must demonstrate a causal connection between his or her speech and the adverse employment determination. *Cobb*, 363 F.3d at 102. The connection "must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Morris*, 196 F.3d at 110; *see also Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir.2000) ("The causal connection must be sufficient to support the inference 'that the speech played a substantial part in the employer's adverse employment action.' ") (quoting *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 780 (2d Cir.1991)).

■ A plaintiff can establish a causal connection with direct or indirect evidence. "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Morris*, 196 F.3d at 110.

■ Timing alone can serve as evidence of causation. A plaintiff can establish a causal connection "by 'showing that the protected activity was closely followed in time by the adverse [employment] action.' " *Gorman–Bakos v. Cornell Cooperative Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir.2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996)); *see also Stein v. Janos*, 269 F.Supp.2d 256, 260 (S.D.N.Y. 2003) ("[T]iming alone ... can serve as circumstantial evidence of causation."). While the timing of the speech and alleged retaliation is critical, there is not a bright line defining "the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos*, 252 F.3d at 554.

■ Because Plaintiff has conducted very little discovery, if any, it is too early for this Court to conclude whether a causal connection exists between Plaintiff's speech and his removal from the Department roster. This Court is unable to determine when Defendants learned of Plaintiff's comments or when and how Defendants learned of Plaintiff's illnesses and resulting disability. Moreover, direct evidence may exist establishing a connection between Plaintiff's comments and his removal from the Department's roster. In short, summary judgment is inappropriate because Plaintiff, in discovery, may be able to obtain evidence that will establish a causal connection between Plaintiff's speech and the adverse employment decision.

### 2. Defendants Must Show One of Two Valid Rationales for Their Action

Once a plaintiff has met his burden, a defendant has two options to refute liability. He or she may show, by a preponderance of the evidence, that that he or she "would have taken the same adverse action regardless of the protected speech." *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir.2004). In the alternative, the defendant may, under the *Pickering* balance test, establish that the plaintiff's speech was "likely to disrupt the government's activities, and

that the likely disruption was sufficient to outweigh the value of the plaintiff's First Amendment expression." *Id.*

In this case, Defendants rely on the first approach. They claim that they demoted Plaintiff because he was disabled and thus unable to perform his duties as a firefighter. (Def. Mem. Supp. Summ. J. 15.) They strongly deny that they demoted Plaintiff because of his speech. *Id.* This conflict between Plaintiff's allegations with Defendants' response is enough to defeat a motion for summary judgment. Defendants must establish that they would have removed Plaintiff from the Department's roster regardless of his public comments. *See Diesel,* 232 F.3d at 108 ("where ... the defendants have met their burden of proving that the adverse action would have occurred in the absence of the protected conduct, there is no liability.").

If Defendants demoted Plaintiff for his speech as well as for valid reasons, Defendants will prevail. "[I]f taken for both proper and improper reasons, state action may be upheld if the action would have been taken on the proper reasons alone." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). A plaintiff's "version of events would be insufficient as a matter of law even if true (even if the defendants were retaliating against protected conduct) if there were proper non-retaliatory reasons for his punishment." *Id.; see also Heil v. Santoro,* 147 F.3d 103, 110 (2d Cir.1998).

■ Just as it is too early for this Court to conclude whether there is a causal connection between Plaintiff's speech and his removal from the Department's roster, it is too early for this Court to determine whether Defendants would have take the adverse action against the Plaintiff in the absence of his speech.[3] It is unclear when Defendants learned of Plaintiff's speech or when Defendants learned of Plaintiff's illnesses and resulting disability. It is also unclear whether other disabled firefighters have been removed from the Department's roster, and, if so, how they have been removed.[4]

Because a number of unanswered questions remain, it would be premature to dismiss Plaintiff's claim at this stage of the proceedings. Defendants have not met their burden, made higher by the fact that discovery is incomplete, of establishing that there is an absence of a genuine issue of material fact.

## C. Qualified Immunity

Defendants argue that the doctrine of qualified immunity precludes discovery. This Court disagrees.

■ Under the doctrine of qualified immunity, government officials are shielded from liability flowing from their performance of discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

Contained in this rule is a two-step analysis, beginning with the threshold inquiry into whether plaintiff's allegations, if true, establish a constitutional violation. *Wilson*

---

**3.** Moreover, summary judgment is inappropriate where intent plays a central role in the analysis. "Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision." *Morris,* 196 F.3d at 110.

**4.** There is evidence that Defendants did not follow proper procedure in removed Plaintiff from their roster. (Pl.'s Mem. Opp. Summ. J. 14.)

*v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). If a plaintiff adequately alleges a constitutional violation (here Plaintiff alleges a violation of his First Amendment rights), the court must then determine whether the constitutional right at issue was clearly established at the time of the alleged infringement (here there is no question this was clearly established). *See id.* at 609, 119 S.Ct. 1692. If it was, then the court must analyze the objective reasonableness of the defendant's belief in the lawfulness of his actions, for if the defendant "reasonably believed that his actions did not violate plaintiff's rights, [the official] is entitled to qualified immunity even if that belief was mistaken." [5] *See Loria v. Gorman,* 306 F.3d 1271, 1281 (2d Cir.2002). Therefore, "even if the plaintiff's federal rights were clearly established at the time of the alleged violation, the defendants may nevertheless enjoy qualified immunity if it was objectively reasonable for them to believe that their actions did not violate those rights." [6] *Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir.1995).

Defendants make much of the argument that this Court should find for Defendants because qualified immunity is immunity from suit, not trial, and that insubstantial lawsuits should be "quickly terminated." *Crawford–El v. Britton,* 523 U.S. 574, 590, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The Supreme Court has noted that one of the purposes of qualified immunity is "to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'" *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Locurto v. Safir,* 264 F.3d 154, 164 (2d Cir.2001) ("It is said that qualified immunity gives government officials the right not only to avoid trial, but also to avoid pre-trial burdens like discovery that can be disruptive of government effectiveness.").

This does not mean, however, that a court should prematurely terminate a valid claim simply because appropriate discovery might inconvenience a government defendant. Granting summary judgment for defendants on grounds of qualified immunity is proper "only 'if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff[ ] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it

---

**5.** *But see Ehrlich v. Town of Glastonbury,* 348 F.3d 48, 55 (2d Cir.2003) (describing the two-step inquiry as (1) determining whether the officer's conduct violated a constitutional right (2) and, if so, whether the right was clearly established); *Shechter v. Comptroller of the City of New York,* 79 F.3d 265, 270 (2d Cir.1996) (describing the two-step inquiry as (1) whether the officer's conduct falls within the scope of the officer's official duties, and (2) whether the defendant's conduct violated one of the plaintiff's clearly established rights).

**6.** Other courts have suggested that qualified immunity is less appropriate when a public employee makes a First Amendment retaliation or other motive-based constitutional claim. "[W]here a more specific intent is

actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectionably reasonable for a government official to act with the intent is prohibited by law." *Locurto v. Safir,* 264 F.3d 154, 169 (2d Cir.2001). Summary judgment may still be available, however. Where an official's conduct is objectively reasonable but the plaintiff alleges that the official has an unconstitutional subjective intent, "plaintiff must proffer particularized evidence of direct or circumstantial facts ... supporting the claim of an improper motive ... to avoid summary judgment." *Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995); *see also Rapkin v. Rocque,* 228 F.Supp.2d 142, 147–48 (D.Conn. 2002).

was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.'" *Ford v. McGinnis,* 352 F.3d 582, 597 (2d Cir.2003) (quoting *Williams v. Greifinger,* 97 F.3d 699, 703 (2d Cir.1996)). Therefore, to grant summary judgment, this Court must be able to conclude that Defendants acted reasonably in removing Plaintiff from the Department's roster.

■ It would be inappropriate to grant summary judgment at this stage of the proceedings because this Court is unable to determine what the Defendants knew about Plaintiff's speech and when they knew it. Therefore, this Court is unable to conclude whether it was objectively reasonable for the Defendants to act as they did.

### D. Claims Against Individual Defendants

Some Defendants argue that any claims against them should be dismissed because the allegations in the complaint are insufficient. This Court finds that the complaint is adequately specific, and Plaintiff is entitled to discovery.

In his complaint, Plaintiff alleges that "Andros, Posadas, Zelem, Bauer, Surks, Black, Ciacci, Sr., and Ciacci, Jr. collectively agreed to engage (on behalf of the Department, the District and themselves) in a campaign to have Plaintiff become the first member of the Department in the Department's history to be terminated." (Compl.¶ 20.) The complaint goes on to allege that "Andros who along with his individually named co-defendants . . . ." attempted to "stop Plaintiff from continuing that public expression of his concerns . . . and warning him that should he not desist, 'things' would be made considerably worse for him . . . ." (Compl.¶ 22.)

■ Plaintiff's complaint is sufficient. "A claim for relief under 42 U.S.C. § 1983 only need allege that some person acting under color of state law deprived the claimant of a federal right." *Green v. Maraio,* 722 F.2d 1013, 1016 (2d Cir.1983). The individual Defendants are both specifically named and described as a group. Had the Defendants required further information before answering the complaint, they should have moved for a more definite statement under Fed.R.Civ.P. 12(e).

### III. Conclusion

Based on the foregoing, Defendants are not entitled to summary judgment because very little discovery has been completed, issues of material fact remain in dispute, and many unanswered questions of intent remain. Accordingly, Defendants' motion for summary judgment is denied without prejudice.

IT IS SO ORDERED.